UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA         CASE NO. 8:18-cr-299T-33AAS

vs.

CHRISTIAN RODRIGUEZ SANCHEZ

## SENTENCING MEMORANDUM

Defendant, Mr. Rodriguez-Sanchez, by counsel Cynthia J. Hernandez, files the following Sentencing Memorandum setting out the factors that the court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

## Legal Framework for Sentencing Analysis

By virtue of these directives and how they relate to Mr. Rodriguez-Sanchez, a sufficient sentence in compliance with § 3553(a)'s mandate is a term of incarceration of 108 months. This sentence is based upon an advisory guideline range of 108 months to 135 months. This range is reached by an anticipated motion for substantial assistance requesting a downward departure.

Mr. Rodriguez-Sanchez also requests that the judgment and commitment order state that he was paroled into the United States, recommend that he placed at Coleman I USP, Florida, participation in UNICOR job program, and be afforded

1

educational opportunities in the areas of the English language, mechanical and electrical training.

### *Circumstances of the Offense*

Mr. Rodriguez-Sanchez, age 26, was born and raises in a small village in Ocos, San Marcos, Guatemala. Mr. Rodriguez-Sanchez was able to complete high school. Unfortunately due to mounting financial pressures from his family he could not pursue a higher education in order to find employment to supplement his family's income. *See* PSIR ¶54.

Prior to his arrest, Mr. Rodriguez-Sanchez was residing with his girlfriend and their two (2) children. Thankfully, both children are in school and are in good health. (PSIR ¶43). Mr. Rodriguez-Sanchez's girlfriend takes care of his two (2) children full-time. Because she is unemployed she needs to reside with his grandmother along with his minor children. This home includes not only his girlfriend but all of his immediate family.

Notably, Mr. Rodriguez-Sanchez had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. He had little knowledge of the scope of the broader conspiracy.

Mr. Rodriguez-Sanchez was later captured by the United States Coast Guard and provided a debriefing to the authorities.

*Guideline Calculations*

Mr. Rodriguez-Sanchez's Presentence Investigation Report (PSR) lists his base offense level as a 38, pursuant to U.S.S.G. §2D1.1(c)(1), for an offense involving 683 kilograms of cocaine. The PSR added 2 levels pursuant to U.S.S.G §2D1.1(b)(3)(C) and subtracted 2 levels pursuant to U.S.S.G. §2D1.1(b)(17). The PSR §5C1.2 (safety-valve reduction) for providing truthful information regarding his involvement in the offense to the government, and also subtracted 3 levels for acceptance of responsibility and a timely plea pursuant to U.S.S.G. § 3E1.1(a). PSR ¶¶ 30, 36-37. The PSR thus found his total offense level to be a 33. PSR ¶31. Mr. Rodriguez-Sanchez is undoubtedly in Criminal History Category I, with no prior criminal history. PSR ¶ 33. The PSR thus estimates his guideline range to be 135-168 months imprisonment.

Finally, the PSR also contains a statutory provision of a minimum term of imprisonment of ten years, which will no longer apply when the government filed its motion for a reduction to reflect the defendant's substantial assistance pursuant to U.S.S.G. §5K1.1. and/or 18 U.S.C. § 3553(e). It is anticipated that the Government will file for a two (2) level reduction for assistance which would

3

result in a total offense level of and the guideline range would be 108-135 months imprisonment.

Mr. Rodriguez-Sanchez has no objections to the PSR calculations.

*Mr. Rodriguez-Sanchez's History and Characteristics of his Offense Suggest That a Sentence of 108 Months Imprisonment Would be "Sufficient but No Greater Than Necessary" to Comply With the Purposes of Sentencing 18 U.S.C. §3553(a) of Just Punishment, Public Protection, and Deterrence.*

Although the guidelines are "the starting point and the initial benchmark" for determining the appropriate sentence, "[t]he Guidelines are not the only consideration" and the sentencing court must consider all of the 18 U.S.C. §3553(a) factors in crafting a sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). When considering the §3553(a) factors, the sentencing judge may give Cir. 2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States,* 128 S.Ct. 558, 570 (2007).

Mr. Rodriguez-Sanchez's guideline range--without the substantial assistance motion--is low end 168 months; with the substantial assistance motion-low end is 108 months; and the statutory mandatory minimum is 120 months. A sentence of low end 108 months is appropriate and just according to the factors that must be examined under 18 U.S.C. § 3553(a). In light of the mitigating history and

4

characteristics of Mr. Rodriguez-Sanchez, as well as the facts and circumstances surrounding the non-violent nature of his offense, a sentence of 108 months to be followed by a 5-year term of supervised release, will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. § 3553(a).

    a.    *A sentence of 108 months adequately reflects the seriousness of the offense.*

The quantity of cocaine in this case is undoubtedly great, and a serious prison sentence is required to answer for this crime and send Mr. Rodriguez-Sanchez and others a message of deterrence that is lasting and sobering. However, those goals are accomplished with a sentence of approximately 108 months. Mr. Rodriguez-Sanchez has never before been to prison, or even arrested for breaking the law. He has no familiarity with the criminal world outside this offense. At 26, Mr. Rodriguez-Sanchez has spent his most life providing for his family as a fisherman. For a man like this, his arrest and incarceration has already been the most devastating event of his life. A sentence of 108 months imprisonment is even more devastating for him than for someone in the United States with the same sentence.

Mr. Rodriguez-Sanchez is cut off from everything he knows, in a strange place where he understands no one and he knows no one. His isolation during

incarceration will be more severe than that of an American citizen serving a similar sentence. Because of this cultural isolation and his utter lack of any history of criminal behavior, a sentence of 108 months is just punishment for this individual.

      *b.     A sentence of 108 months will protect the public.*

Mr. Rodriguez-Sanchez does not require a longer sentence than 108 months to protect the public from any further crimes by him. There is ample evidence in this case that Mr. Rodriguez-Sanchez will **never again** return to this country after he completes his sentence and deportation. There are no factors here that suggest a risk of recidivism. Mr. Rodriguez-Sanchez's entire world and system of support exists with his family in Ecuador. His only motivation for attempting this crime was to obtain funds to pay for a home for his family. Outside this, Mr. Rodriguez-Sanchez had no desire to participate in this drug trip. He does not exhibit any characteristics of a man who is lured toward criminal activity even at home. Furthermore, the hallmarks of his life outside this crime suggest that his real life, the one before this offense, will again be his permanent station.

The United States Office of Probation and Pretrial Services (OPPS) developed a risk assessment instrument for assessing an individual's risk and needs when placed on supervision after conviction. The Federal Post Conviction Risk Assessment (PCRA) is a 55 item quantifiable instrument that measures a person's

6

risk of recidivism across seven domains: criminal history, including arrests; education and employment; alcohol and drug problems; social networks; cognitions (antisocial attitudes); other (housing, finance, recreation; and responsivity factors (personal, cultural, and societal barriers to change). A risk score is determined by adding up the points for scored items, which then correspond to a risk of recidivism based on a past analysis of OPPS data.

Similarly, the Federal Judicial Center developed the Risk Prediction Index (RPI) after several years of study and testing in eleven districts, now used by U.S. Probation officers during their assessments of newly released offenders to "estimate the likelihood that an offender will be arrested or have supervision revoked during his or her term of supervision." U.S. Probation, *The Supervision of Federal Offenders, Monograph 109,*111-10. (March 2007 Update). The RPI measures seven variables: (1) the offender's age; (2) the number of arrests before the instant offense; (3) employment status (4) history of illegal drug or alcohol abuse; (5) prior history of absconding from supervision; (6) whether the offender has a college degree; and (7) whether the offender was living with a spouse and/or children at the start of supervision. These variables are assigned value, which are totaled for a score, which can then be compared to other offenders for risk of recidivism.

When Mr. Rodriguez-Sanchez's circumstances are measured according to either index, the PCRA, or the RPI, he would most certainly score in an extremely low risk category for recidivism. From the RPI perspective, again, Mr. Rodriguez-Sanchez has no prior arrests, steady employment, no history of absconding, and a stable family. Mr. Rodriguez-Sanchez statistically bears the hallmarks of someone with an extremely low risk of reoffending because of his age, lifetime employment, marital status, and first offender status. Increased age bears a strong correlation with lower recidivism. According to Sentencing Commission data, "recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5 % over age 50. USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (May 2004). The Commission's studies demonstrate that stable employment in the year prior to arrest is associated with a lower risk of recidivism. *See Measuring Recidivism*, supra at 12. (Mr. Rodriguez-Sanchez has worked consistently and supported his family as a fisherman since his teens) Commission studies show that recidivism rates are lower for defendants who are married. *See Measuring Recidivism,* supra at 11. Finally and most critically, Sentencing Commission studies show that minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. *See USSC, A Comparison of the*

*Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 15 (2005).

There is no evidence that Mr. Rodriguez-Sanchez poses any sort of danger to the public, and a wealth of evidence to suggest that he will never again return to the justice system. His history is devoid of any suggestion of criminal activity or violence. Increased imprisonment in this case is not necessary to establish deterrence. Evidence of the deterrent value of imprisonment is ambiguous at best, and not a sound basis upon which to sentence. *See* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules; Finding and Using the Philosophy of the Federal Sentencing Guidelines,* 40 Am. Crim. L. Rev. 19, 61- 62 (2003). Moreover, the punishment Mr. Rodriguez-Sanchez has sustained already is so devastating to him because of his crime that this Court does not need to consider greater incarceration to accomplish adequate deterrence.

Finally, Mr. Rodriguez-Sanchez's arrest has caused a great deal of suffering to his family, and a sentence greater than 108 months will prove traumatic to them, as their economic situation is already precarious and they rely on him for their survival. The absence of his financial and paternal support for his children will do real damage to their lives. His absence and extended incarceration is destabilizing to everyone in his life.

Mr. Rodriguez-Sanchez acknowledges and accepts that he has committed a serious federal crime and understands the need for punishment. He submits, however, that the nature and circumstances of his offense, and his personal history and characteristics, weigh in favor of a sentence of 108 months.

**WHEREFORE**, Mr. Rodriguez-Sanchez prays this Court will grant the relief requested herein and enter an order of 108 months incarceration.

Respectfully submitted,

By: *s/ Cynthia Hernandez*

CYNTHIA HERNANDEZ, ESQ.
Florida Bar No. 0010422
3030 N Rocky Point Dr., Suite 150
Tampa, Florida 33607
Phone: (813) 841-2933
Email: cjhernandezlaw@gmail.com
*Attorney for Defendant Rodriguez-Sanchez*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of December 2018, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to Nicholas Derenzo, Assistant United States Attorney, United States Attorney's Office at 400 North Tampa Street, Suite 3200, Tampa, Florida 33602.

By: *s/ Cynthia Hernandez*

Cynthia Hernandez, Esq.
Attorney for Defendant