# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.   Case No. 8:18-CR-229-T-33AAS

**NELSON ARMANDO PROANO-CORTEZ**
_____/

## SENTENCING MEMORANDUM

Now Comes Defendant, Nelson Armando Proano-Cortez, and requests a sentence of 70-87 months' imprisonment.

### BACKGROUND

On a day last year, Nelson Armando Proano-Cortez was watching an indoor soccer game in his hometown of Esmeraldas, Ecuador. A man named Diego approached him and asked Mr. Proano-Cortez if he wanted to go on a trip. Diego made clear that the "trip" would involve transporting cocaine on a boat to Mexico. Diego explained that he could pay Mr. Proano-Cortez $2,000 up front and a total of $40,000 once the trip was complete. Thinking of what money of that sum could do for his family, Mr. Proano-Cortez accepted. He took his $2,000 home, and Diego accompanied him on a lengthy cab ride. Diego paid the cab driver $600 when they reached San Lorenzo, Ecuador.

From San Lorenzo, the pair traveled across the Columbian border to Tumaco,

where cartel members in a small go-fast boat picked them up and brought them to the small town of El Carmen, Columbia. In El Carmen, Diego left Mr. Proano-Cortez, and he began taking instructions from a group of about 15 cartel members, many of whom were providing security or conducting counter-surveillance. He was introduced to his co-defendants, Jimmy Espinal and Christian Rodriguez-Sanchez, and was shown the vessel on which he would travel. The go-fast boat was already loaded with food, water, fuel, and about 741 kilograms of cocaine. The workers at the launch site spoke of "Simon" as the owner of the drugs. Mr. Espinal was the captain and Mr. Rodriguez-Sanchez was the load guard, responsible for supervising the transaction for the drugs' buyer. Mr. Espinal later explained that the drugs were owned by Simon and his brother, who had recently been arrested.

One of the cartel members, a dispatcher, instructed Mr. Proano-Cortez on his role: he was to operate the boat's motors, and drive slowly to avoid detection, at around 10-12 miles per hour. The vessel launched, and another vessel from the launch site full of cartel members accompanied them out to sea. When that vessel broke away, Mr. Proano-Cortez did as he was told, operating the motors at a slow speed and taking direction from Mr. Espinal, the captain, until the Coast Guard interdicted them.

Mr. Proano-Cortez is the son of a farmer and one of eleven children. He grew

up in a loving family in Ecuador but lived in extreme poverty, often without enough food or clothing. He completed only one year of high school because there was no money for him to go further. He left home at 18 so that he would not be "another mouth to feed." He has found work as a construction laborer his entire life, going door-to-door looking for work and sometimes only finding work once a month. He has two adult daughters and has been with his de facto wife, Jacquelines, for over 20 years. The couple lives in a small rented house with no electricity in Esmeraldas. He has no criminal history. He is 52.

**ARGUMENT**

This Court should apply a downward adjustment to the Guidelines calculation because of Mr. Proano-Cortez's minor role in the offense. Then, this Court should impose a Guidelines sentence to reflect the nature of the offense and Mr. Proano-Cortez's history and characteristics. This Memorandum assumes that Mr. Proano-Cortez is eligible for relief from the mandatory minimum sentence under the "safety valve," 18 U.S.C. § 3553(f). If he is not, this Court should impose the mandatory minimum, to at least reflect his lesser role among his co-defendants, who have been sentenced to 102 months and 129 months, respectively.

A. <u>A downward adjustment for Mr. Proano-Cortez's role in the offense is warranted.</u>

The Guidelines permit a two-level downward adjustment for a defendant who

is a minor participant in the criminal activity. U.S.S.G. § 3B1.2(b). The adjustment applies to those defendants who play a role in the criminal activity that makes them substantially less culpable than the average participant, and applies to those who are only accountable for conduct in which they were personally involved, such as a drug mule "whose participation in [the] offense was limited to transporting or storing drugs . . . ." U.S.S.G. § 3B1.2 cmt. n.3(A).

The determination is fact-sensitive and determined on the basis of the totality of the circumstances, considering five non-exhaustive factors:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under the guideline if he or she is substantially less culpable than the average participant in the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C).

Each of these factors favors a minor role adjustment for Mr. Proano-Cortez. He understood nothing about the structure or scope of the criminal activity. He was simply to take drugs from Ecuador to a point in the Pacific Ocean off Mexico. He had nothing to do with planning and had no decision-making authority. His activity was limited to operating the motors on the boat, and he exercised no discretion in that task, driving the boat in the direction provided by Mr. Espinal at a speed provided by the dispatcher. He had no proprietary interest in the drugs, and was paid a pittance in comparison to the market value of such a large amount of drugs. Like the Commission's example, he was "simply being paid to perform certain tasks . . . ." Accordingly, the adjustment applies to Mr. Proano-Cortez.

The PSR essentially concedes that each of the factors applies to Mr. Proano-Cortez. (PSR Addendum) ("[A]ll participants can claim that the factors . . . apply to them . . . .). However, the PSR does not apply the adjustment because "no single participant in this case can claim or prove that he was substantially less culpable than

any of the other participants who are identifiable or discernible from the evidence." (*Id*.). In coming to this conclusion, the PSR considers only the charged defendants in the case.

This analysis is legal error and misunderstands the facts. To be considered in the universe of participants against which Mr. Proano-Cortez's culpability must be compared, a participant must be "identifiable *or* discernible." *United States v. Rodriguez De Varon*, 175 F.3d 930, 944 (11th Cir. 1999) (emphasis added). As will be shown at the sentencing hearing, the following participants are "identifiable *or* discernible": Diego (the recruiter); the individuals who recruited Messrs. Espinal and Christian-Rodriguez; the cartel members who transported Diego and Mr. Proano-Cortez from Tumaca to El Carmen in the first go-fast boat; the approximately 15 cartel personnel at the launch site in El Carmen, including the armed security and counter-surveillance men; the dispatcher, who provided the destination and manner of travel; and, to some extent, "Simon" and his brother, the owners of the drugs. This list does not include anyone in the "broader conspiracy," as the PSR suggests. It involves participants in *this* conspiracy, the distribution of the very 741 kilograms of cocaine at issue in this case. It does not include unknown or speculative members of the broader cartel or drug trade generally, but those the evidence reveals were involved in *this* offense. Under *Rodriguez De Varon*, the list

6

of participants is not limited to those named in the indictment and, in any event, Mr. Proano-Cortez pled guilty to conspiring with his two co-defendants and others unknown to the grand jury.

Given this group of participants, Mr. Proano-Cortez had a minor role. He is obviously less culpable than "Simon" and his brother. He is less culpable than the dispatcher, who provided the boat, drugs, destination, time of launch, and manner of travel. He is less culpable than Diego and any other recruiters, who recruited directly for the cartel and spent its money. He is less culpable than the security and counter-surveillance personnel at the launch site, and the boat drivers from Tumaca to the launch site, each of whom were entrusted with the drugs' location. He is less culpable than Mr. Espinal, who was the captain of the vessel and directed its travel. He is less culpable than Mr. Christian-Rodriguez, who supervised the drugs' progress for the buyer, and was prepared to report to them if they were diverted by the crew (effectively ordering their murders).

Mr. Proano-Cortez is less culpable than *all* of the "discernible" participants, and "substantially" less culpable than the "average" participant in this group. He simply helped drive a boat provided by someone else, loaded with someone else's cocaine, at a speed provided by someone else, to a destination provided by someone else, for the primary benefit of someone else. Accordingly, he had a minor role, and

this Court should make a two-level downward adjustment under § 3B1.2, and a four-level adjustment to the base offense level under § 2D1.1(a)(5)(B)(iii).

B.  The nature of the offense and Mr. Proano-Cortez's history and characteristics warrant a Guidelines sentence following the minor role adjustments.

Given the minor role downward adjustment, Mr. Proano-Cortez's Guidelines range is 70-87 months' imprisonment. This Court should impose a sentence within that range. To be sure, the nature of this offense and the quantity of cocaine involved implicate the needs to punish, deter, and incapacitate. However, those needs are mitigated in this case by Mr. Proano-Cortez's circumstances and motivation for committing the offense. As for punishment, Congress requires this Court to consider "just punishment." Mr. Proano-Cortez turned to the drug trade as a mule after a lifetime of extreme poverty, making him particularly susceptible to the cartel's recruitment. (PSR ¶ 70). While his motivations do not excuse his actions, they do lessen the degree of his culpability.

A 70-to-87-month sentence is also warranted to reflect Mr. Proano-Cortez's lesser role in the larger drug trafficking scheme. While the minor-role adjustment accounts for this to some extent within the Guidelines range, it does not consider those actors within the scheme that are not discernible or identifiable from the evidence, or who were involved in conduct outside of the defendant's relevant conduct. *Rodriguez De Varon*, 175 F.3d at 944. In considering the statutory

sentencing factors under 18 U.S.C. § 3553, however, this Court is not so limited. Mr. Proano-Cortez is an insignificant cog in the massive and intricate machinery of the South American drug trade. A host of actors unknown to both the Government and Mr. Proano-Cortez owned and controlled the cocaine and its further distribution to addicts. His infinitesimally small role in the drug trade as a mariner on Panga boat decreases his culpability and the amount of punishment that is "just."

As to deterrence, it takes little punishment to specifically deter Mr. Proano-Cortez. A man with no criminal history at all, at age 52, he will be ripped from his country and his family and confined in an American prison among hardened criminals who do not speak his language for a period of years. The message to Mr. Proano-Cortez will be clearly received, and he is unlikely to climb aboard another rickety Panga boat again in his sixties and risk further foreign imprisonment. Because the specific deterrence of Mr. Proano-Cortez will be so effective even with a shortened prison sentence, the need to protect society from further crimes committed by him is also diminished in this case. Finally, as to general deterrence, the power of even a long prison sentence to project general deterrence from Tampa, Florida, to the next hapless, impoverished cartel recruit in Ecuador is questionable at best. Mr. Proano-Cortez's sentence should not be increased on the unlikely hope

9

that the population of a foreign country will suddenly get the message. Such sentences are appropriate for cartel kingpins, not insignificant deck hands.

Finally, Mr. Proano-Cortez's history and characteristics suggest a man deserving of some measure of mercy for his mistake. He grew up in abject poverty and succumbed to the temptation to try to make the life-changing sum of $40,000. A sentence of 70-87 months' imprisonment will promote respect for both international norms and this nation's drug laws. This Court should impose such a sentence.

**WHEREFORE** the Defendant, Mr. Proano-Cortez, prays this Court will impose a sentence between 70-87 months.

DATED this 2nd day of January 2019.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s Samuel E. Landes*
Samuel E. Landes
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Samuel_Landes@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd of January 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

SAUSA Nicholas Derenzo.

*/s **Samuel E. Landes***
Samuel E. Landes
Assistant Federal Defender